## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| IN RE: | § |
| | § |
| Dennis J. Mope | § CASE NO. 09-02202-6B3 |
| Debtor | § |
| | § |

## MOTION FOR ORDER GRANTING
## RELIEF FROM AUTOMATIC STAY AND CO-DEBTOR STAY

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Net Bank c/o Systems & Services Technologies, Inc., its assignees and/or successors in interest, ("Movant") alleges as follows:

1. On February 26, 2009 ("Petition Date"), Dennis J. Mope ("Debtor") filed a Chapter 13 petition in bankruptcy with this Court.

2. This Court has jurisdiction of this Motion by virtue of 11 U.S.C. §§105, 361, and 362 and 28 U.S.C. §§157 and 1334.

3. Movant and Debtor entered into a Retail Installment Contract and Security Agreement ("Agreement") on April 14, 2004, whereby Movant financed the purchase by Debtor and Denise A. Mope ("Co-Debtor") of a 2004 NISSAN/DATSUN 350Z-V6 CPE 2D TRACK   VIN: JN1AZ34DX4T163822 ("Collateral"). Co-Debtor is an individual jointly liable on this consumer debt and has received goods and valuable consideration for her promise to pay. Copies of the Agreement and the Certificate of Title, indicating proper perfection of Movant's security interest in the Collateral, are attached hereto as Exhibits "A" and "B", respectively.

4. By virtue of the above, Movant is the holder of a claim against Debtor in the amount of $7,895.65 as of the Petition Date. Debtor's Chapter 13 Plan ("Plan") does not provide to pay Movant's claim and provides to surrender the Collateral to Movant.

5. With respect to the Agreement, the following is due and owing:

| | |
|---|---|
| Unpaid Principal Balance | $7,904.10 |
| Arrearages: | |
| Attorneys' fees and costs | $625.00 |
| Total Arrearages | $625.00 |

6. Movant has elected to initiate repossession proceedings on the Collateral; however, is precluded from proceeding with repossession during the pendency of this case.

7. Movant alleges that the automatic stay should be lifted for cause pursuant to 11 U.S.C. §§362(d)(1) and 1301(a) as Movant lacks adequate protection as evidenced by:

    (a) The Plan provides to surrender the Collateral to Movant;
    (b) Debtor is unable to show that the Collateral is properly insured; and
    (c) The Collateral, and the value of the Collateral, are in a state of decline and continue to decline.

8. Furthermore, Movant alleges that the codebtor stay should be lifted pursuant to 11 U.S.C. §1301(c) as evidenced by:

    (a) Co-Debtor has received good and valuable consideration for the claim held by Movant;
    (b) The Plan provides to surrender the Collateral to Movant; and
    (c) Movant's interest would be irreparably harmed by the continuation of the codebtor stay.

9. Based on the foregoing, Movant alleges that it is not adequately protected and that the Collateral is not necessary to effectuate Debtor's reorganization. It would be inequitable to delay Movant in the repossession of the Collateral. Movant urges that this Court issue an Order permitting Movant to proceed with repossession or other action necessary to obtain possession of the Collateral.

10. Movant has incurred attorneys' fees in bringing this Motion and is entitled to reimbursement for these fees pursuant to the Agreement.

WHEREFORE, Movant prays judgment for: 1) an Order granting relief from the automatic stay and codebtor stay, permitting Movant to proceed with repossession or other necessary actions to obtain possession of the Collateral, and to dispose of it in a commercially reasonable manner; 2) such Order regarding adequate protection of Movant's interest as this Court deems proper; 3) attorneys' fees and

costs for suit incurred herein; and 4) such other relief as this Court deems appropriate.

Dated: March 27, 2009

Respectfully submitted,

Mangum & Associates, P.A.

/s/ Kevin E. Mangum

---

Kevin E. Mangum (Bar No. 904260)
5100 Highway 17-92, Suite 200
Casselberry, Florida 32707
Phone: (407)478-1555
Fax: (407)478-1552
Local Counsel for Movant

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Motion for Relief from the Automatic Stay and Co-Debtor Stay has been served upon the following parties in interest by first class U.S. Mail on the 27th day of March, 2009.

**Debtor Attorney**
James H. Monroe
P.O. Box 540163,
Orlando, Florida 32854

**Debtor**
Dennis J. Mope
8409 Tibet Butler Dr,
Windermere, Florida 34786-5307

**Co-Debtor**
Denise A. Mope
8409 Tibet Butler Dr.
Windermere, Florida 34786-5307

**Trustee**
Laurie K. Weatherford
P.O. Box 3450,
Winter Park, Florida 32790

**U.S. Trustee**
Kenneth C. Meeker
135 W. Central Blvd., Suite 620
Orlando, Florida 32801

/s/ Kevin E. Mangum
_____
Kevin E. Mangum

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

36294          Dealer Number _____          Contract Number _____          163822

**Buyer (and Co-Buyer) Name and Address (including County and Zip Code):**
DENNIS JOHN HOPE    DENISE ALEXANDRIA HOPE
8409 TIBET BUTLER DR
WINDERMERE ORANGE FL 34786
Buyer's Month of Birth:

**Creditor - Seller (Name and Address):**
UNIVERSAL NISSAN/HYUNDAI
12801 S. ORANGE BLOSSOM TRAIL
ORLANDO, FL          32837

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of 7.826 % per year. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2004 | NISSAN 350Z | | JN1AZ34DX4T163822 | X personal, family or household<br>☐ business<br>☐ agricultural  ☐ _____ |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 6107.77 |
|---|---|---|---|---|
| 7.93 % | $ 8862.19 | $ 34088.69 | $ 42950.88 | $ 49058.65 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 596.54 | Monthly beginning 05/14/2004 |

Or As Follows:

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of __5__ % of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you may have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, prepayment penalties, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED
1  Cash Price (including $ 2055.11 sales tax)                $ 39848.11 (1)
2  Total Downpayment =
   Trade-In  93  DODGE  STEALTH
         (Year)   (Make)    (Model)
   Trade-In  JB3BM44H6PY011523
                    (VIN)
   Gross Trade-In Allowance              $ 3957.77
   Less Pay Off Made By Seller           $ N/A
   Equals Net Trade In                   $ 3957.77
   + Cash                                $ 2150.00
   + Other _____                        $ N/A
   (If total downpayment is negative, enter "0" and see 4H below)  $ 6107.77 (2)
3  Unpaid Balance of Cash Price (1 minus 2)                  $ 33740.34 (3)
4  Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   A  Cost of Optional Credit Insurance Paid to the Insurance Company or Companies.
      Life          $ N/A
      Disability    $ N/A                  $ N/A
   B  Other Insurance Paid to the Insurance Company           $ N/A
   C  Official Fees Paid to Government Agencies  MVWEA FEE   $ 2.00
   D  Government Documentary Stamp Taxes                      $ 119.35
   E  Other Taxes Not Included in Cash Price                  $ N/A

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit. Your choice of insurance providers will not affect our decision to sell or extend credit to you.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
**Optional Credit Insurance**
☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)
Premium:        N/A
   Credit Life $ _____ N/A
   Credit Disability $ _____ N/A
Insurance Company Name _____
Home Office Address _____

Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

If the box above is checked to indicate that you want credit life insurance, please read and sign the following acknowledgments:
1. You understand that you have the option of assigning any other policy or policies you own or may procure for the purpose of covering this extension of credit and that the policy need not be purchased from us in order to obtain the extension of credit.

_____  _____
Buyer                    Date

_____  _____
Co-Buyer                 Date

2. You understand that the credit life coverage may be deferred if, at the time of application, you are unable to engage in employment or unable to perform normal activities of a person of like age and sex. (You need not sign this acknowledgement if the proposed credit life insurance policy does not contain this restriction.)

_____  _____
Buyer                    Date

_____  _____
Co-Buyer                 Date

**EXHIBIT A**

|   | Company or Companies: | | | |
|---|---|---|---|---|
|   | Life | $ N/A | | |
|   | Disability | $ N/A | $ N/A | |
| B | Other Insurance Paid to the Insurance Company | | $ N/A | |
| C | Official Fees Paid to Government Agencies | MVWEA FEE | $ 2.00 | |
| D | Government Documentary Stamp Taxes | | $ 119.35 | |
| E | Other Taxes Not Included in Cash Price | | $ N/A | |
| F | Government License and/or Registration Fees (Identify) | | $ 202.00 | |
| G | Government Certificate of Title Fees | | $ 25.00 | |
| H | Other Charges (Seller must identify who is paid and describe purpose) | | | |
|   | to ____ for Prior Credit or Lease Balance | | $ N/A | |
|   | to ____ for ____ | | $ N/A | |
|   | to N/A for N/A | | $ N/A | |
|   | to ____ for ____ | | $ N/A | |
|   | to ____ for ____ | | $ N/A | |
|   | to ____ for ____ | | $ N/A | |
|   | to ____ for ____ | | $ N/A | |
|   | to ____ for ____ | | $ N/A | |
|   | Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 348.35 (4) | |
| 5 | Loan Processing Fee Paid to Seller (Prepaid Finance Charge) | | $ 100.00 (5) | |
| 6 | Amount Financed (3 plus 4) | | $ 34088.69 (6) | |
|   | Payment Schedule: 72 installments of $ 596.54 each, monthly beginning 05/14/2004 or as follows | | | |

Buyer _____ Date
Co-Buyer _____ Date

3. You understand that the benefits under the policy will terminate when you reach a certain age and affirm that your age is accurately represented on the application or policy.

Buyer _____ Date
Co-Buyer _____ Date

**Other Insurance**

☐ _____
Type of Insurance _____ Term
Premium $ _____
Insurance Company Name _____
Home Office Address _____

I want the insurance checked above.

Buyer Signature _____ Date
Co-Buyer Signature _____ Date

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

Returned Check Charge: If any check or order of payment you give us is dishonored, you will pay a charge if we make demand that you do so. The charge will be $25 if the check amount is $50 or less; $30 if the check is over $50 but not more than $300; $40 if the check amount is over $300, or such amount as permitted by law.

OPTION: ☐ You pay no finance charge if the amount financed, item 6, is paid in full on or before _____ N/A _____. Year _____ . SELLERS INITIALS _____

**NO COOLING OFF PERIOD**
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others. Buyer (and any Co-Buyer) initials _____ _____
See back for other important agreements.

NOTICE TO THE BUYER: a) Do not sign this contract before you read it or if it contains any blank spaces. b) You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.

You agree to the terms of this contract and confirm that you received a completely filled-in copy when you signed it.
Buyer Signs _____ Date 04/14/2004 Buyer Signs _____ Date 04/14/200(
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The co-buyer or other owner knows that the Creditor has a security interest in the vehicle and consents to the security interest.

Other owner signs here _____ Address _____
Seller signs ... UNIVERSAL NISSAN/HYUNDAI Date 04/14/2004 _____ Title _____

Seller assigns its interest in this contract to _____ (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse    ☐ Assigned without recourse    ☐ Assigned with limited recourse
UNIVERSAL NISSAN/HYUNDAI
Seller _____ By _____ Title _____

LAW FORM NO. 553-FL

ORIGINAL LIENHOLDER

OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **You may ask for a payment extension.** You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see below) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.
   
   If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree

   If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
      * You do not pay any payment on time;
      * You start a proceeding in bankruptcy or one is started against you or your property; or
      * You break any agreements in this contract.
      
      The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as permitted by law. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. **What we may do about optional insurance or service contracts.** This contract may contain charges for optional insurance or service contracts. If we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle.

4. **WARRANTIES SELLER DISCLAIMS**
   **Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance or service contracts we finance for you; and
- All proceeds from insurance or service contracts we finance for you. This includes any refunds of premiums.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance or service contract charges.** If we obtain a refund on insurance or service contracts, we will subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

---

this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **Optional Service Contracts.**
You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

7. **Rejection or Revocation.**
If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

8. **Applicable Law**
Federal law and the law of the state of the Seller's address shown on the front of this contract apply to this contract.

[upside-down text:] Florida documentary st... required by law in the amount of $ _____ have been paid or will be paid directly to the Department of Revenue Certificate of Registration #58-1725752

---

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-FL 3/03

B04290

**STATE OF FLORIDA** | **LIEN SATISFACTION**

| IDENTIFICATION NUMBER | YR | MAKE | MODEL | BODY | WT-L-BHP | VESSEL REGIS. NO. | TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| JN1AZ34DX4T163822 | 2004 | NISS | | 2D | 3121 | | 90488751 |

REGISTERED OWNER
DENNIS JOHN MOPE  OR
DENISE ALEXANDRIA MOPE
8409 TIBET BUTLER DR
WINDEMERE   FL 34786

DATE OF ISSUE
05/12/2004

LIEN RELEASE
INTEREST IN THE ABOVE DESCRIBED VEHICLE IS HEREBY RELEASED

BY_____

TITLE_____  DATE_____

MAIL TO:   04/14/2004
NET BANK
PO BOX 3240
ST JOSEPH MO 64503

---

# CERTIFICATE OF TITLE

SATISFACTORY PROOF OF OWNERSHIP HAVING BEEN SUBMITTED UNDER SECTION 319.23/328.08, FLORIDA STATUTES, TITLE TO THE MOTOR VEHICLE OR VESSEL DESCRIBED BELOW IS VESTED IN THE OWNER(S) NAMED HEREIN. THIS OFFICIAL CERTIFICATE OF TITLE IS ISSUED FOR SAID MOTOR VEHICLE OR VESSEL

| IDENTIFICATION NUMBER | YR | MAKE | MODEL | BODY | WT-L-BHP | VESSEL REGIS. NO. | TITLE NUMBER |
|---|---|---|---|---|---|---|---|
| JN1AZ34DX4T163822 | 2004 | NISS | | 2D | 3121 | | 90488751 |

| PREV STATE | COLOR | PRIMARY BRAND | SECONDARY BRAND | NO OF BRANDS | USE | PREV ISSUE DATE |
|---|---|---|---|---|---|---|
| N | BLU | | | | PVT | |

| ODOMETER STATUS | OR VESSEL MANUFACTURER OR OH USE | HULL MATERIAL | PROP | DATE OF ISSUE |
|---|---|---|---|---|
| 232 MILES | 04/14/2004 ACTUAL | | | 05/12/2004 |

REGISTERED OWNER
DENNIS JOHN MOPE   OR
DENISE ALEXANDRIA MOPE
8409 TIBET BUTLER DR
WINDEMERE   FL 34786

LIEN RELEASE
INTEREST IN THE ABOVE DESCRIBED VEHICLE IS HEREBY RELEASED
BY_____
TITLE_____  DATE_____

1ST LIENHOLDER   04/14/2004

NET BANK
PO BOX 3240
ST JOSEPH  MO 64503

DIVISION OF MOTOR VEHICLES   TALLAHASSEE   FLORIDA   DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES

CARL A. FORD
DIRECTOR

Control Number 66210911

FRED O. DICKINSON III
EXECUTIVE DIRECTOR

ODOMETER CERTIFICATION - Federal and state law require that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

This title is warranted and certified to be free from any liens except as noted on the face of this certificate and the motor vehicle or vessel described is hereby transferred to:

Purchaser:_____   Address:_____

I/We state that this [ ] 5 or [ ] 6-digit odometer now reads [ ][ ][ ][ ][ ][ ] [xx] (no tenths)
Selling Price: $_____   Date Sold:_____

miles, date read_____ and to the best of my knowledge
that it reflects the actual mileage of the vehicle described herein, unless one of the odometer statement blocks is checked.

CAUTION
DO NOT CHECK
BOX IF ACTUAL
MILEAGE

[ ] 1. I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
[ ] 2. I hereby certify that the odometer reading is not the actual mileage.
WARNING - ODOMETER DISCREPANCY

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

Signature of
Purchaser:_____
Signature of
Co-Purchaser:_____
Signature of
Seller:_____
Signature of
Co-Seller:_____
(When Applicable)
Selling Dealer's License Number:_____

Printed Name of
Purchaser_____
Printed Name of
Co-Purchaser_____
Printed Name of
Seller_____
Printed Name of
Co-Seller_____

Tax No._____   Tax Collected: $_____
Auction Name_____   License Number:_____

**STATE OF FLORIDA**

VOID IF ALTERED

EXHIBIT
B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| IN RE: | § |
| | § |
| Dennis J. Mope | § CASE NO. 09-02202-6B3 |
| Debtor | § |
| | § |
| | § |

## AFFIDAVIT OF KRISTI KELLEY

I, Kristi Kelley, being duly sworn, state that:

1. "As to the following facts, I know them to be true of my own personal knowledge, and if called upon to testify in this action, I could and would testify competently thereto.

2. "I am employed by Net Bank c/o Systems & Services Technologies, Inc., its assignees and/or successors in interest, and am the individual who is most familiar with the subject agreement in favor of Net Bank c/o Systems & Services Technologies, Inc., and the ongoing bankruptcy litigation herein.

3. "I am the custodian of the business records of Net Bank c/o Systems & Services Technologies, Inc., which records (i) were made or near the time by, or from information transmitted by, a person with knowledge; (ii) are kept in the course of a regularly conducted business activity; and (iii) are made as a regular practice of that business activity.

4. "Net Bank c/o Systems & Services Technologies, Inc. and Debtor and Co-Debtor entered into a Retail Installment Contract ("Agreement") on April 14, 2004, under which Net Bank c/o Systems & Services Technologies, Inc. financed a 2004 NISSAN/DATSUN 350Z-V6 CPE 2D TRACK   VIN: JN1AZ34DX4T163822 ("Collateral").

5. "On or about February 26, 2009, Debtor commenced the instant Chapter 13 Bankruptcy proceeding in this Court.

6. "With respect to the Agreement, the following is due and owing:

| | |
|---|---|
| Unpaid Principal Balance | $7,904.10 |
| Arrearages: | |
| Attorneys' Fees and Costs | $625.00 |
| Total Arrearages | $625.00 |

7. "Debtor's Chapter 13 Plan provides to surrender.

8. "Net Bank c/o Systems & Services Technologies, Inc. believes that the replacement value of the Collateral is approximately $15,925.00, according to the February 2009 issue of the NADA Official Used Car Guide.

9. "Net Bank c/o Systems & Services Technologies, Inc. has elected to initiate repossession proceedings on the Collateral; however, it is precluded from proceeding with the repossession action during the pendency of this bankruptcy."

DATED: 3/20/09

_____
Kristi Kelley
Bankruptcy & Legal Supervisor

SUBSCRIBED AND SWORN TO before this 20TH day of MARCH, 2009

_____
Notary Public

My commission expires: FEB 23, 2012

[Notary Seal: BRENNA D. HANKEN-PIKE, My Commission Expires Feb 23, 2012, Commission #08382931, Buchanan County, NOTARY SEAL, STATE OF MISSOURI]